IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JESSICA L. GILLILAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv54-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied the plaintiff's claim for benefits. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff was 28 years old at the time of the hearing before the ALJ and had completed the eighth grade. (R. 37). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "Spinal Stenosis/Lumbar

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Degenerative Disc Disease; Obesity; and Estimated Low Average/Borderline Intellectual Functioning." (R. 20). Her prior work experience includes work "as a fast food worker and information clerk." (R. 29). Following the hearing, the ALJ concluded that the plaintiff could return to her past relevant work, and thus, she is not disabled. (*Id.*).

**B. Plaintiff's Claims.** The plaintiff presents a single issue for the court's review. As stated by the plaintiff, the issue is whether the "Commissioner's decision should be reversed, because the ALJ failed to properly apply the two-part pain standard." (Pl's Br., doc. # 12 at 7).

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision

referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

Gilliland contends that the ALJ failed to properly apply the pain standard, and thus her testimony should be taken as true leading to a finding of disability. As explained below, the ALJ did not fully credit Gilliland's testimony. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively

determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.  *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553.  Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law.  This standard requires that the articulated reasons must be supported by substantial reasons.  If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

At the administrative hearing, Gilliland testified that pain in her lower back is the basis for her disability claim.  (R. 44).  She testified that the pain is a

> shooting pain in my right leg and my left hip, . . . [M]y back has like a pulling sensation in it at just about all times.  If I move a certain way, it feels like lightening strikes me and I just about, it takes my breath away, and I can't, you know, I have to just sit down or wherever I'm at and just take a break for a second.

(*Id.*)

The ALJ recited Gilliland's testimony and discussed the medical evidence.  The ALJ acknowledged that Gilliland has "medically determinable impairments that could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (R. 25-26).  If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief.  However, a review of the ALJ's analysis demonstrates that the ALJ properly

considered and discredited Gilliland's testimony. Rather than give a synopsis of it, the court will quote it.

> The claimant alleges that she experiences back pain that she rates as 8 out of 10, with 10 being the worst pain. She testified that she cannot stand, walk, or sit for too long and that she has difficulty holding her arms out, reaching, stooping, bending, and lifting. She also alleges that she has missed more work than allowed by her employers. The claimant also alleges incontinence as a result of her back impairment. The claimant also alleges that she has a mental impairment that causes her to have a poor memory and prevents her from being able to work. She alleges that she has difficulty with subtraction (Exhibit 1E; Exhibit 2F).
>
>         *    *    *
>
> In terms of the claimant's alleged back impairment, the claimant's complaints are partially credible but not to the extent alleged. The claimant testified that she has back pain that goes to her left hip and she feels a pulling sensation all the time. She also testified that when she stands up sometimes she feels a "lightening" sensation that causes her to have to sit and take a break for a second. Although she testified that she can sit for thirty to forty-five minutes a day or stand for thirty minutes at a time, Dr. Metzger recommended that the claimant walk several mines a day. The claimant testified that she has not walked that much. The claimant testified that on a daily basis that she can do the dishes but sits while doing them. She also testified that she can cook, shop for groceries, make jewelry, carry one or two grocery bags, and drive. She did state that she was unable to drive for a long distance. However, the claimant was able to travel recently to Mobile to visit her mother-in-law. In Exhibit 7E, the claimant has also indicated that she is able to drive enough to drop her daughter off and pick her up from school twice a day. However, she also stated that she cannot bathe every day due to pain and that it takes all day to clean the house due to the need to take breaks. Therefore, the claimant's activities of daily living only partly add to her credibility of alleged limitations (Exhibit 5E; Exhibit 7E).
>
> The claimant has also alleged incontinence and bowel dysfunction resulting from her back impairment. Although she has indicated this symptom to Dr. Johnson, he recommended that the claimant see another doctor or have more invasive treatment for her back impairment. She claimant did see Dr. Metzger

according to Dr. Johnson, but Dr. Metzger's treatment notes of the examination indicate that the claimant did not complain of her bladder or bowel problems. He recommended, as has Dr. Johnson, that the claimant consider epidural injections or weight loss treatment. However, Dr. Metzger also recommended that the claimant avoid taking narcotic pain medications as well. The claimant declined to see another specialist for the bladder and bowel dysfunction additional times according to Dr. Johnson's treatment notes. It is concluded that there is no limitation on the claimant's ability to work suggested due to this complaint. The claimant's testimony at the hearing regarding her bladder functioning also fails to show limitations on her ability to work. She did link her back pain to her incontinence, and the medical evidence does not indicate such a link. However, she indicated that at her most recent job that she was able to compensate for her incontinence and she does not allege the need for frequent breaks or a similar limitation for this symptom (Exhibit 2E; Exhibi 7F; Exhibit 8F).

The medical evidence does support the existence of the claimant's back impairment and her condition is described as an "unusual" level of stenosis for her age and "severe congenital spinal stenosis" by Dr. Metzger. He indicates that her MRI shows mild degenerative changes and only mild to moderate stenosis but indicates such at each disc space in the lumbar spine. He specifically states that the claimant should avoid narcotic pain medication and that she should walk two miles a day despite her impairment. He states that the claimant is not a surgical candidate yet, but that she also has refused spinal injections as a treatment. His opinion is at least somewhat in conflict with the level of pain and limitations that the claimant reports and does not support the extent of her allegations. Likewise, Dr. Johnson states that the claimant has lumbar disc disease but found that she has complete range of motion of her neck and back in his examinations. Only on his most recent examination did he find that she had some restriction of motion in her neck. He also found that her straight leg raises were negative and she has symmetrical reflexes. He also notes that she has gone for a period of time without taking prescribed pain medication. He states at her examination on March 15, 2007, that she has not taken any medication regularly for her back pain that has provided relief. However, after that point, Dr. Johnson states that the claimant is getting good relief with the Lortab as he adjusts her medication. Dr. Johnson's treatment notes also never indicate any abnormalities or other findings related to the claimant's back impairment. He does not indicate tenderness in the spinal area and he only indicates subjective pain complaints by the claimant. While those complaints are fairly frequent, claimant's reports of pain in Dr. Johnson's

treatment notes correspond mainly to the times that her prescription for Lortab has run out which occurs several times (Exhibit 14F; Exhibit 8F; Exhibit 7F).

The claimant testified that she takes Lortab five days a week in a seven day week and that she takes three a day on the days that she needs them. She also testified that she took 800 mg Motrin and Tylenol Arthritis and had some relief, but not as much relief as she experiences with the Lortab. For a number of months, however, the claimant was not able to take Lortab and she was only taking Motrin and Tylenol alone. She testified that she was unable to afford Lortab, but there is no indication of attempting to get low cost or free medication and she does testify that she had some relief without the Lortab.[4] She also testified that Lortab gives her headaches, but only when wearing off. The claimant testified that she experiences drowsiness as a side effect of Lortab, but no side effects at all from the Motrin or Tylenol. She testified that she would rate her pain as an eight out of ten, on a scale with ten being the worst pain. However, the over the counter pain medication, to some extent, and Lortab, to a greater extent, both have decreased her level of pain according to her testimony.

In terms of the claimant's limitations from obesity, the impact of the claimant's obesity is considered also in the assessment of limitations of the claimant's ability to work. However, the claimant has not alleged limitations in her ability to work arising from her obesity other than those also attributed to his (sic) back impairment. While the claimant's obesity is considered alongside her back impairment in the reduction of the claimant's ability to work to the light exertional level and the postural limitations of climbing, stooping, kneeling, crouching and crawling, additional limitations in the claimant's ability to work are not alleged to be caused by this impairment. The claimant testified that she is 5'8" and weighs 290. Dr. Metzger indicates that weight loss would be of tremendous benefit to the claimant, but indicates no limitation due to her weight other than the enhancement of the back impairment. The claimant was diagnosed as obese or overweight by Dr. Butler, Dr. Johnson, and Dr. Metzger. Each doctor also indicated that a weight loss program would help the claimant relieve her back pain and Dr. Johnson also discussed gastric bypass surgery with the claimant during an examination. However, no additional limitations in the claimant's residual functional

---

[4] The court notes that Gilliland testified that she has insurance through her husband, (R. 43), and while she may have had difficulty one time getting Lortab, Dr. Johnson has continued to prescribe the drug for her beginning in 2006, and continuing until the administrative hearing.

> capacity are supported by the medical evidence due to her obesity alone. As for the limitations of the claimant's back impairment, the impact of the claimant's obesity has been considered by the undersigned with regard to the effect of obesity on the claimant's other impairments and the medical evidence and the limitations caused by the impairments in combination have been considered. However, the claimant does not allege further difficulties arising from her obesity nor does the medical evidence support further limitations on the claimant's ability to work than provided in the residual functional capacity (Exhibit 6F; Exhibit 8F; Exhibit 4F; Exhibit 7F).
>
> Therefore, the claimant's allegations arising from her back impairment and obesity are partly credible to support the limitation to light work with limitations in climbing, stooping, kneeling, crouching, crawling, pushing, pulling and concentrated exposure to machinery, or heights. However, the claimant's complaints of symptoms of her back impairment are not credible to support further limitations in her residual functional capacity.

(R. 25-28) (footnote added).

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate *reasons* for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Relying on the

treatment records, objective evidence, and Gilliland's own testimony, the ALJ concluded that her allegations regarding the extent of her back pain were not credible to the extent alleged and discounted that testimony. After a careful review of the ALJ's careful and thoughtful analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. However, the ALJ concluded that while Gilliland's underlying condition is capable of giving rise to some pain and other limitations, her impairments are not so severe as to give rise to the disabling intractable pain as she alleged.

The medical records support the ALJ's conclusion that while Gilliland's back impairment could reasonably be expected to produce pain, Gilliland was not entirely credible in her description of her symptoms or her pain. For example, Gilliland testified that while her back pain renders her disabled, she is able to do chores around the house, and go grocery shopping. (R. 49-50). She also testified that she is able to cook, shower, and bathe as well as go out. (R. 49). She can drive and walk, although she does not walk as recommended by Dr. Metzger. (R. 44, 46).

Furthermore, the medical records do not corroborate her testimony of debilitating pain. In January 2007, Gilliland presented to the South Central Medical Center complaining of back pain. (R. 218). However, her examination was normal with "[n]o swelling, redness, or tenderness" noted. (R. 219). She had normal strength and tone as well as full range of

motion in her back. (*Id*.) Although Gilliland was referred to physical therapy, there is no indication in the record that she attended physical therapy.

Gilliland presented to the Red Level Clinic in March 2007 complaining of back pain. (R. 236). At that time, no deformities were noted, her straight leg raises were negative, and her reflexes were symmetrical. (*Id*.) On March 22, 2007, Gilliland reported that she only took the Lortab at night because it relieved her pain and allowed her to sleep. (R. 234). She took Tylenol and Ibuprofen during the day for relief. (*Id*.) She declined epidural injections or surgery, "preferr[ing] to continue with what she has." (*Id*.) Dr. Johnson recommended that she lose weight and do back exercises regularly. (*Id*.) There is no indication in the record that Gilliland attempted to follow the prescribed exercise treatment. Although Gilliland continued to present to Dr. Johnson complaining of back pain, she declined referrals to orthopedic doctors or other specialists. (R. 232, 225, 228).

More importantly, Dr. Johnson noted that Gilliland had full range of motion in her back with negative straight leg raises and symmetrical reflexes when he saw her on January 7, 2008, February 7, 2008, March 7, 2008, July 11, 2008, and November 7, 2008. (R. 222-24 & 277-76).

During an consultative psychological evaluation on June 10, 2007, Gilliland reported that she felt good on most days. (R. 251). Dr. Warren Brantley, PhD., opined that Gilliland "should be able to re-enter the work force." (R. 253).

After a careful review of the record, the court concludes that the ALJ's reasons for

discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence. To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

### V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 30th day of June 2011.

                /s/Charles S. Coody
            CHARLES S. COODY
            UNITED STATES MAGISTRATE JUDGE